IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

CHESTERFIELD COUNTY SCHOOL BOARD,
         Plaintiff,

v.                                       Civil Action No. 3:20cv56

MICHELLE WILLIAMS,
         Defendant.

## OPINION

This matter comes before the Court on the parties' cross-motions for summary judgment. (ECF Nos. 33, 35.) In August 2019, the defendant, Michelle Williams, filed an administrative due process complaint against the plaintiff, Chesterfield County School Board (the "School Board"), alleging violations of the Individuals with Disabilities Education Act ("IDEA"). On September 20, 2019, the parties reached a settlement agreement, which, in part, barred Williams from filing additional due process complaints against the School Board for any violations before the date of the agreement.

In December 2019, notwithstanding the settlement agreement, Williams filed another due process complaint against the School Board, which included IDEA claims predating the agreement. The School Board sued Williams to enforce the settlement agreement, arguing Williams's December 2019 complaint violated the agreement's terms. Because Williams's December 2019 complaint violated the settlement agreement, the Court will deny her motion for summary judgment and grant in part the School Board's motion for summary judgment.

# I. BACKGROUND

### A. The IDEA's Procedural Framework

Under the IDEA, public schools that accept federal funds must provide a "free appropriate public education" to all students with disabilities "between the ages of 3 and 21." 20 U.S.C. § 1412(a)(1)(A). The IDEA establishes formal procedures that allow a parent to challenge whether his or her child's school complied with the IDEA. First, a parent may file a due process complaint with the local educational agency. *Id.* § 1415(b)(6). Within fifteen days of the parent's complaint, the parties must meet to try to resolve the parent's claims. *Id.* § 1415(f)(1)(B). If the parties cannot reach an agreement, the matter proceeds to an administrative hearing before a special education hearing officer. *Id.* § 1415(f)(1)(A); *see* 8 Va. Admin. Code § 20-81-210(A).

### B. Statement of Facts

On August 22, 2019, Williams filed a due process complaint against the School Board. The parties resolved these claims and entered a settlement agreement, which Williams signed on September 20, 2019. Under the agreement, the School Board would provide some educational services to Williams's twenty-three-year-old son. In turn, Williams "agree[d] not to file any state or federal complaint, due process hearing, or any other legal proceeding regarding issues that occurred prior to the date of the [settlement agreement] and which relate to [her son]." (ECF No. 1-1.)

On December 11, 2019, Williams filed another due process complaint against the School Board. In the December 2019 complaint, Williams asserted numerous alleged IDEA violations. Some of these alleged violations occurred before the settlement agreement; others occurred after.

2

On January 11, 2020, the School Board sued Williams to enforce the September 2019 settlement agreement and thereby prevent Williams from pursuing her December 2019 complaint. The parties have filed cross-motions for summary judgment. The School Board seeks a declaratory judgment and permanent injunction. Williams asks for dismissal of the School Board's suit.

## II. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure directs courts to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a summary judgment motion, the court must draw all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Nevertheless, if the non-moving party fails to sufficiently establish the existence of an essential element to its claim on which it bears the ultimate burden of proof, the court should enter summary judgment against that party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Where parties file cross-motions for summary judgment, courts consider 'each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law.'" *Capitol Prop. Mgmt. Corp. v. Nationwide Prop. & Cas. Ins. Co.*, 261 F. Supp. 3d 680, 687 (E.D. Va. 2017) (quoting *Defs. of Wildlife v. N.C. Dep't of Transp.*, 762 F.3d 374, 392-93 (4th Cir. 2014)).

## III. DISCUSSION

### A. Williams's Motion for Summary Judgment

Williams asks the Court to grant summary judgment in her favor and dismiss the School Board's complaint. She argues that she did not violate the settlement agreement because her complaint mentions pre-settlement conduct merely to provide background information. She

3

claims that all violations she alleged occurred after the agreement.[1] This is incorrect. As discussed below, Williams's complaint asserts at least one violation that occurred "from 2015-present." (ECF No. 1-5.)

Although she does not say so, the Court construes Williams's motion as a claim that the equitable doctrine of unclean hands entitles her to summary judgment. The doctrine of unclean hands doctrine requires that "a litigant who seeks to invoke an equitable remedy must have clean hands." *Butler v. Hayes*, 254 Va. 38, 45, 487 S.E.2d 229, 232 (1997). Essentially, Williams alleges that because the School Board violated the settlement agreement, the School Board cannot receive an injunction to enforce it. For example, Williams argues that the School Board violated the settlement agreement by failing to begin the agreed upon instruction by October 15, failing to provide "make-shift" instruction, and failing to hold an eligibility meeting. (ECF No. 35, at 2-3.) She further asserts that the School Board "had no intention of upholding [its] promise." (*Id.* at 6.) But the evidence shows that the School Board made good faith efforts to comply with the agreement. It provided two of the three required assessments and attempted to schedule the third with Williams. And according to emails from district staff and an affidavit from the district's special education services coordinator, the School Board made the required instruction available to Williams's son on October 15. These facts do not entitle Williams to summary judgment. The Court will deny her motion.

---

[1] Although Williams insists in her motion for summary judgment that the School Board violated the settlement agreement, the Court does not construe these arguments as a breach of contract counterclaim. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate."); *see also Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment."); *White v. Potocska*, 589 F. Supp. 2d 631, 640-41 (E.D. Va. 2008) (citing *Shanahan*, 82 F.3d at 781) (holding that arguments not included in the defendant's counterclaim were "not properly before the [c]ourt").

4

### *B. The School Board's Motion for Summary Judgment*

#### *1. Breach of Contract Claim*

To enforce the settlement agreement, the School Board must show (1) Williams had a legally enforceable obligation to the School Board, (2) Williams violated that obligation, and (3) the School Board has suffered an injury or damage from Williams's violation. *Filak v. George*, 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004).[2] The School Board has established each element.

First, both parties agree that the settlement agreement created a legally enforceable obligation. (ECF No. 34, at 13; ECF 7, at 3.)

Second, Williams violated the agreement when she filed her December 2019 complaint. The December 2019 complaint alleged multiple IDEA violations that occurred before September 20, 2019. The settlement agreement barred Williams from raising those claims. Indeed, Williams agrees that the agreement prohibited her from filing any additional due process complaints alleging violations that occurred on or before September 20, 2019. (ECF No. 7, at 3.)

Williams claims that she cited these alleged violations to provide background information in her complaint. But her complaint actually argues that the School Board violated the IDEA by "proposing the same and/or similar individualized educational plan goals for [her son], with little or no progress, *from 2015-present.*" (ECF No. 1-5, at 8 (emphasis added)). She further requested compensatory services to correct "egregious academic and social deficits that were never properly addressed" by the School Board. (*Id.*) This shows Williams sought relief for alleged violations predating the settlement agreement. Indeed, a review of these claims necessarily requires a hearing officer to consider conduct from before the parties settled, which

---

[2] *See S. Kingstown Sch. Comm. v. Joanna S.*, No. CA 13-127 ML, 2014 WL 197859, at *10 (D.R.I. Jan. 14, 2014) (holding that "[t]he federal court should apply the state law of contract to the interpretation of the settlement" under the IDEA), *aff'd*, 773 F.3d 344 (1st Cir. 2014).

5

the settlement agreement bars. Thus, although Williams also asserted post-settlement agreement violations in her December 2019 complaint, her request that the hearing officer review the School Board's actions predating September 20, 2019, violated the terms of the settlement agreement.

Finally, Williams's December 2019 complaint injured the School Board. To enforce the agreement and stop Williams's complaint, the School Board had to sue her. Furthermore, a due process hearing would strain the school system's normal operational functioning, consuming staff time and resources. The School Board has established Williams breached the settlement agreement. The Court will therefore enter a declaratory judgment holding that Williams violated a valid and enforceable contract by alleging pre-settlement violations in her December 2019 complaint.

### 2. *Permanent Injunction*

The Court previously issued a preliminary injunction in favor of the School Board. (ECF No. 16.) The Court now finds that the School Board has demonstrated the need for a permanent injunction.

To secure a permanent injunction, a plaintiff must demonstrate "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

First, Williams's December 2019 complaint injures the School Board by requiring it to cooperate with a due process hearing regarding Williams's pre-settlement agreement claims.

6

Without an injunction, Williams's wide-ranging complaint—which cites allegations dating back to 2015—would force the School Board to expend significant time, resources, and costs in preparing for the due process hearing. Teachers, counselors, and administrators must set aside precious time to prepare evidence and attend defense strategy meetings—time they could have used to further the School Board's purpose of educating children. For example, the special education services coordinator spent forty-five hours resolving Williams's first complaint from August 2019. That same complaint also cost the School Board over $15,600 in legal fees and hearing officer costs. The School Board would likely incur similar costs to resolve Williams's allegations about conduct that began in 2015. Thus, the School Board has shown "that it would suffer irreparable injury absent the injunctive relief." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 938 (4th Cir. 1995).

Second, the School Board has no adequate remedy at law. As explained above, resolving a single due process complaint costs the School Board not just money but lost staff time and resources in preparation for a hearing. If not for the due process complaint, these resources would instead go to the educational mission of the school system. Money damages would not make the School Board whole after losing time and resources from hearing preparation, making an injunction appropriate.

Third, the balance of equities tips in the School Board's favor. Without a court order, the administrative due process hearing must proceed, as IDEA-appointed administrative hearing officers lack jurisdiction to enforce settlement agreements.[3] Denying an injunction would therefore render the parties' agreement—and the effort they put into it—worthless. The School

---

[3] *See* 8 Va. Admin. Code § 20-81-210(A); *see also* 34 C.F.R. §§ 300.121, 300.507-518; *H.C. ex rel. L.C. v. Colton-Pierrepont Cent. Sch. Dist.*, 341 F. App'x 687, 690 (2d Cir. 2009); *J.K. v. Council Rock Sch. Dist.*, 833 F. Supp. 2d 436, 448 (E.D. Pa. 2011).

7

Board merely asks the Court to enforce its valid contract with Williams. On the other hand, Williams asks the Court to give her contract violation a green light. Declining to enforce the agreement would undermine the parties' reliance interests in the agreement and violate equitable principles of fairness.

Finally, an injunction lies in the public interest. At some point, settlement agreements must bind parties in ending a dispute. Granting an injunction here holds parties to their contractual obligations. Moreover, an injunction allows the School Board to conserve its time and resources and avoid the costs of preparing for a due process hearing, ensuring it can instead focus on its educational mission. The Court affords this consideration significant weight during the ongoing COVID-19 pandemic, which has only amplified the hardship that adjudicating a due process complaint would impose on the School Board.

The circumstances here, however, warrant enjoining Williams only from pursuing allegations of misconduct predating the settlement agreement. Williams can still sue to enforce the settlement agreement against the School Board. She may also file additional due process complaints against the School Board for violations that occurred *after* the settlement agreement. She may even pursue the claims of alleged post-settlement violations in her December 19 complaint. But she may not file or pursue complaints that predate the settlement agreement. The Court, therefore, will grant in part the School Board's motion for summary judgment and issue a permanent injunction enjoining Williams from filing or pursuing any IDEA violations that predate the settlement agreement.

## CONCLUSION

For the foregoing reasons, the Court will grant in part the plaintiff's motion for summary judgment and issue a permanent injunction. Additionally, the Court will deny the defendant's motion for summary judgment.

The Court will enter an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 12 November 2020
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge